STATE v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY AND ANOTHER.[1]

June 2, 1939.

No. 31,956.

[1]Reported in 286 N. W. 303.

*J. A. A. Burnquist,* Attorney General, and *John A. Weeks,* Assistant Attorney General, for the State.

*Fryberger, Fulton & Boyle,* for respondents.

GALLAGHER, CHIEF JUSTICE.

Appeal by the state of Minnesota from order denying its blended motion for amended findings or a new trial made after findings and conclusions in defendants' favor.

Plaintiff instituted this action to collect penalties for violations of 3 Mason Minn. St. 1938 Supp. § 4754 (known as the track clearance law) alleged to have occurred on June 17 and 18, 1937. Defendant Minneapolis, St. Paul & Sault Ste. Marie Railway Company, a corporation, operates its railroad in Minnesota and has lines in the city of Duluth. Defendant West End Iron and Metal Corporation owns and operates a scrap metal business in Duluth. The scrap yard owned by the latter is adjacent to the tracks of defendant railroad.

The complaint alleges that defendants permitted piles of scrap iron and miscellaneous metal parts to be maintained so as to create an obstruction within eight feet of the center line of the track in violation of the aforementioned statute. Answers were interposed by defendants denying that the tracks were obstructed within the meaning of the law. Issues were joined. The action was tried without a jury. Findings of fact and conclusions of law were made and judgment was ordered for defendants. Plaintiff's motion for amended findings or a new trial having been denied, this appeal followed.

The statute which plaintiff claims was violated by defendants is 3 Mason Minn. St. 1938 Supp. § 4754. It provides:

"That on and after the passage of this act, it shall be unlawful for any common carrier, or any other person, to erect or reconstruct and thereafter maintain on any standard gauge road on its line or on any standard gauge sidetrack used in connection therewith, for use in any traffic mentioned in Section one of this act, any warehouse, coal chute, stock pen, pole, mail crane, standpipe, hog drencher, or any permanent or fixed structure or obstruction, or in excavating allow any embankment of earth or natural rock to remain upon its line of railroad, or on any sidetrack used in connection therewith at a distance less than eight feet measured from the center line of the track, which said structure or obstruction adjoins on standard gauge roads; nor shall any overhead wires, bridges, viaduct or other obstruction passing over or above its tracks as aforesaid be erected or reconstructed at a less height than twenty-one (21) feet, measured from the top of the track rail."

The findings of fact to which appellant objects read as follows:

"4. * * * That none of such articles and materials constituted a permanent or fixed structure or obstruction, but were wherever they were temporarily for the purpose of or while in process of unloading the same into the storage yards of said defendant West End Iron and Metal Corporation from said defendant railway company or for the purpose of or while in process of loading the same from said storage yards of said defendant West End Iron and Metal Corporation to said defendant railway company. * * *"

"6. That the defendants did not keep the space beside said tracks entirely free from pieces of scrap iron articles and material which might be temporarily a hazard to employees of defendant railway company when passing over or between said tracks or when using the same by day or night and under all weather conditions, but such condition of the space beside said tracks was a necessary incident to the loading and unloading of such scrap iron

articles and material in a reasonably efficient manner and did not create an unnecessary hazard to said employees."

Stephen C. Lush, employed by the Brotherhood of Railroad Trainmen, visited the premises on June 3, June 17, and July 28, all in 1937, as well as a number of times during 1936. He testified for the plaintiff that on these occasions he observed that piles of scrap located in the yard extended toward the rails so that a distance of less than eight feet separated them from the center line of the tracks. A. E. Smith and P. E. Wickstrom, both of the state industrial department, visited the lot on June 17, 1937, and testified that they found stock piles protruding into the clearance area for about six inches. Pete Theodore Olsson, employed by the railroad and warehouse commission, testified that he saw the premises in question on June 17 and 18, 1937, and that miscellaneous scraps were scattered near the tracks; one pile of metal on the south side of the tracks was within the clearance area by over two feet; larger piles north of the track encroached up to eight inches; the maximum height of the piles within the forbidden limit was about six feet.

For defendants, Leo Jarva, timekeeper and caretaker for West End Metal, testified to the following effect: Scrap iron is hauled to the lot in question in cars which are spotted on the track. A crane is driven to the side of the car and a magnet or chain attached thereto is let into the car. The crane is then swung so that the scrap can be dropped in the yard where it is sorted. The iron is then put in piles from which it is later loaded into cars and shipped as ordered. Since the crane can reach only a limited distance, metal about to be shipped is left near the track. When the scrap is being loaded or unloaded pieces inevitably fall from the chain or magnet onto or near the track. While the stock piles may have been partly within the clearance area, this situation was only temporary, since the scrap was shipped away soon after it was put there. Scrap which fell from the crane onto or near the track was cleaned up as soon as feasible. On June 17, 1937, the crane was in operation for 20 hours. On that and the following day 82 tons of iron were

taken from the pile closest to the track on the north side and were hauled away. There was a constant turnover of stock during the busy season, which included the period here in question.

The testimony of Jarva was substantiated by that of J. E. Davis, president of West End Metal, and two other employes of the same corporation.

In our opinion, the facts found by the trial court are supported by the evidence. Faced with the burden of proof, plaintiff failed to show that the scrap which extended into the forbidden zone remained there for any considerable period of time. Its witnesses admitted that they were not familiar with the exigencies of the scrap metal business. They could not say that the piles which they saw on their various visits were the same in every instance. On the other hand, witnesses for defendants explained the presence of the scrap in the area with reference to the peculiar conditions of the business in which they were engaged. They testified that any intrusions into the clearance space were temporary and due to the nature of their work. This evidence is in accord with the conclusion that encroachments by defendants were of a transitory character. The findings of fact having been properly made, the conclusions of law adopted by the court followed as a matter of course.

Being in doubt as to whether or not the complaint was intended to charge a violation of 1 Mason Minn. St. 1927, § 4758, we adopt a negative view in light of the statement made by appellant in its brief to the effect that it was of the opinion that this section is not applicable to the facts here involved.

Order affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.